PER CURIAM.
The report of the referee in grievance proceeding has been filed with us. No review has been sought by the attorney, but we are required to review the report of the referee. Rule 11.09(3)(f).
In Count I, the referee reported that the attorney commingled trust funds with personal and office funds in that he used his trust account to conduct personal business and overdrew the trust account on occasions from 1974 through 1976. The report also contains the following:
1)In May 1976, Respondent represented a seller in a property transaction involving a few acres of land and a double-wide mobile home in Marion County. The buyers were Mr. and Mrs. McCleod who were working through their realtor. Total price of the transaction was in excess of $27,000.
2) The buyers received a closing statement from Respondent on July 23, 1976. Having previously deposited $1,000, they sent a check for $26,000 to the realtor on July 26,1976, to cover the costs necessary to complete the sale. He turned it over to Mr. McGovern.
To finish the transaction and secure title to the trailer, sales tax and transfer fees on the doublewide mobile home had to be paid. The buyers’ one-half share was $251.10, which was part of the money forwarded through the realtor to Respondent who was to pay the fees and secure the documents.
3) Over the next several months the buyers failed to receive the necessary transfer papers to the trailer. Their attempts to contact Respondent in September 1976 and December 1976, produced no results. Efforts by their realtor through February 1977 failed to induce Respondent to pay the taxes and fees and produce the titles. When the realtor was able to contact Respondent in January 1977, he indicated the delay was due to slowness in Tallahassee.
4) After many fruitless phone calls, the realtor’s attorney sent McGovern a letter dated February 9, 1977, requesting Respondent complete the matter. He received no response.
5) Finally, in July 1977, the McCleods requested their realtor to utilize the duplicate powers of attorney they had given him to secure duplicate titles. The realtor then had to contact the former owner who was located in Illinois to secure a power of attorney from him to secure the titles.
6) The McCleods also had to pay the entire amount due on taxes and fees which totaled $501.20, to secure valid titles to the doublewide trailer, as opposed to the one-half share they originally were to pay, pursuant to the closing.
7) The McCleods have received no portion of their $251.10 back from Respondent.

*132
Case 05A 76 019

1) In September 1975, as attorney for one party in a dissolution of marriage case, Respondent arranged to sell approximately three acres, a house and two mobile homes in Marion County to Billie Ruth Greene for $15,000. Mrs. Greene was not then represented by counsel.
2) The land and house were held by the seller and his ex-wife as tenants in common.
3) Mrs. Greene gave Respondent a total of $3,810 to hold in escrow until the seller’s ex-wife concurred in the sale. She gave Respondent the bulk of the money by checks dated September 26, 1975, with the remaining $500 paid before the end of the year.
4) The Respondent gave Mrs. Greene a handwritten receipt for $3,000 dated September 26, 1975, which promised return of her money if the deal did not close.
5) Mr. McGovern told her it would cost $3,500 to buy out Mrs. Robinson’s interest. Mrs. Robinson’s attorney stated that the price for her interest, discussed during the summer of 1975 when the deal was being negotiated, was $3,000 plus the furniture. In fact, his client moved out of the house upon being promised the same. Despite promises over the next several weeks by Respondent, no money was forthcoming. Finally, Respondent’s secretary advised Mrs. Robinson’s attorney that Respondent did not want to see him.
6) Little or no action was taken by Respondent to secure Mr. Robinson’s consent to enable the sale to close over the next several months and no closing date was ever agreed on.
7) Meanwhile, the attorney representing Mr. Robinson filed a partition action for his client in late 1975. Mrs. Greene attended one hearing with Mr. Robinson. Respondent was not present. Thereafter on March 17, 1976, Mrs. Greene sought legal counsel to assist her.
8) Mrs. Greene subsequently was able to contact Mr. McGovern who asked her to delay action for a short period and he would negotiate a credit for her on the purchase with Mr. Robinson’s attorney. On March 19, 1976, she told her attorney she had contacted him and he stated he had contacted Mrs. Robinson’s attorney and that the contract would be closed shortly. Her new counsel called the other attorney and found Mr. McGovern had made no contact with him.
9) Her attorney’s efforts to contact McGovern by telephone and a letter dated March 24, 1976, during this period of time produced no results.
10) On March 30, 1976, her attorney filed suit for conversion against Respondent seeking return of the monies she had paid. He also filed a motion to intervene in the partition action and went to the authorities regarding possible criminal action.
11) On May 5, 1976, Respondent contacted her attorney who stated he told him he just discovered the March 24, 1976, letter and had placed her money in the hands of an individual to bid in for her at the foreclosure sale of the property-
12) On the same day a woman delivered $3,837.50 in cash to the office of Mrs. Greene’s attorney.
13) Eventually, Mrs. Robinson bought out her husband’s interest in the land. Mrs. Greene retained one of the trailers Mr. Robinson had signed over to her earlier.
14) For seven months Respondent retained at least $3,000 of Mrs. Greene’s money and some $500 more for over four months. He failed to apply any of it to the purpose it had been given to him. He also failed to contact the attorney for Mrs. Robinson despite knowledge she was ready to accept the offer which he apparently was able to complete. His refusal to see or speak with this attorney subsequently led to the partition action.
15) Although Mrs. Greene was not his client, Respondent had a duty to apply the money for the purposes indicated or to return it to her. He did the latter only after suit for conversion was filed against him and the prosecuting authorities contacted.
*133 The Respondent attorney was found guilty of all charges and it was recommended by the referee that the Respondent be disbarred from the practice of law in Florida. This attorney has evidenced a total lack of understanding of his responsibilities as an attorney and to members of The Florida Bar, and further gives no reason either by conduct or otherwise to be entrusted with the authority to practice law.
The recommendation of the referee is approved and Respondent, Owen McGovern, Jr., is disbarred from the practice of law in Florida. The disbarment shall be effective on November 27, 1978, thereby giving respondent time to close out his practice and take the necessary steps to protect his clients, and it is ordered that respondent shall not accept any new business. The filing of a motion for rehearing shall not alter the effective date of this disbarment.
Costs in the amount of $1,187.10, as itemized in the report of the referee, are hereby assessed and charged to the Respondent, Owen McGovern, Jr.
It is so ordered.
ADKINS, Acting C. J., and BOYD, OVERTON, SUNDBERG and HATCHETT, JJ., concur.